Russell A. Robinson, SBN 163937
Law Office of Russell A. Robinson
345 Grove Street, 1st Floor
San Francisco, CA 94102
Phone:     415.861.4415
Fax:       415.431.4526
rlaw345@gmail.com

Counsel for Plaintiff
**AARON MATTHEW HALL**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON MATTHEW HALL, | No.   15-CV-2706-YGR |
| Plaintiff, | **AMENDED COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF** |
| v. | **[Jury Trial Demanded]** |
| CITY OF PLEASANTON, CHIEF OF POLICE DAVE SPILLER, SGT. MARK REIMER, OFFICER RYAN TUJAGUE (#245), DET. WILSON (#201), OFFICER STEVE AYERS (#262), and, DOES 1-50, | |
| Defendants. | |

**JURISDICTION AND VENUE**

1.  This action arises under 42 USC §1983. Jurisdiction is based on 28 USC §§1331 and 1343.

2.  The claims alleged below arose in and around the City of Pleasanton, State of California. Therefore, venue and assignment are proper in the United States District Court for the Northern District of California, San Francisco Division, under 28 USC §1391(b)(2).

**PARTIES**

3.  Plaintiff AARON MATTHEW HALL is a hard-working, long-time member of Local 3, Operating Engineers, IUOE, who resided at all relevant times on Echo Court in Pleasanton. Prior to events at issue, Plaintiff had been arrested once, convicted in 1994; that conviction was expunged and sealed in 2004. He received positive evaluations at work throughout his adult

1  life, and had a vested property interest in continued employment through Local 3.

2      4.    Plaintiff is informed and believes that Defendant CITY OF PLEASANTON is and has been, a municipal corporation organized and existing under the laws of the State of California. One of Defendant Pleasanton's divisions is the Pleasanton Police Department.

    5.    Defendant DAVE SPILLER is, at all relevant times has been, the Chief of Police for the City of Pleasanton. Defendant Spiller is sued in his individual and official capacities. At all relevant times, Plaintiff is informed and believes that Defendant Spiller has been the official policy-maker for Pleasanton on matters related to customs, practices, and policies of the Pleasanton Police Department (PPD), including but not limited to hiring, training, supervision, and discipline of officers under his command, and with respect to the management and supervision of the PPD.

    6.    Defendant SGT. MARK REIMER, sued individually and in his official capacity, was present at relevant times during the events described below, and knew or should have known that the actions by persons under his supervision were unlawful. OFFICER RYAN TAJAGUE (#245), also sued individually and in official capacity, was the employee of the PPD who obtained an unlawful warrant and admitted on July 2, 2013, to executing that warrant on June 20, 2013. Defendants DET. WILSON (#201) and OFFICER STEVE AYERS, (#262), also sued individually and in official capacity, were present during the search and participated in seizing evidence that was unrelated to the crimes of which Aaron Matthew Hall's son, Cody Hall, was accused. Defendants knew, or should have known, that the scope of the search as well as the warrant were in fact unlawful.

    7.    Plaintiff is informed and believes that at all relevant times Defendants DOES 1-50 have been officers with the PPD. Each is sued in individual and official capacities.

    8.    Plaintiff is ignorant of the identities of Defendants DOES 1 though 50, and therefore sues such defendants as fictitiously named persons/entities, whose true identities and roles in the events which are the subject matter of this complaint, are presently unknown to Plaintiff. Plaintiff will amend this complaint to identify fictitiously named Defendants and to set forth facts relating to each when same become known to Plaintiff. Plaintiff is informed and

*Hall v. Pleasanton, et al.*
AMENDED COMPLAINT FOR DAMAGES
AND FOR INJUNCTIVE RELIEF   - 2 -   P001A

1 believes and thereon allege that each DOE Defendant is legally responsible for events alleged
2 herein which caused injury and damage to Plaintiff.

3     9. In doing the acts or omissions alleged, the defendants and each of them were
4 acting in the course and scope of their employment with the City of Pleasanton.

5     10. In doing the acts or omissions alleged, the defendants acted under color of
6 authority and/or under color of law.

7     11. In doing the acts or omissions alleged, each of the defendants acted as the
8 agent, servant, employee, and/or in concert with each of the other Defendants herein.

**FACTS**

10     12. Plaintiff is informed and believes that Defendants named in paragraphs 6
11 through 11 above, individually or acting in concert, engaged in repeated acts of harassment,
12 police misconduct, and constitutionally-destructive conduct against persons residing in or
13 traveling to or visiting the City of Pleasanton. These repeated acts, part of a pattern and
14 practice, did in fact lead to the constitutional deprivations complained of herein.

15     13. Plaintiff is informed and believes that said civil rights violations and/or other
16 acts of misconduct included false arrests, false warrant affidavits, unreasonable searches and
17 seizures, unlawful searches and arrests thereon, intimidation, falsifying reports, planting of
18 evidence, denial of due process and equal protection of laws, conspiracy to violate civil rights,
19 engaging in stigmatizing behavior, and/or other misconduct.

20     14. As a result, Plaintiff and others like him were subjected to unequal treatment,
21 civil rights violations, and other misconduct by Defendants named herein.

22     15. Plaintiff is informed and believes that Defendant Spiller and other high-ranking
23 members of the PPD repeatedly failed to take remedial or corrective action despite the
24 pervasive and ongoing malfeasance within the PPD.

25     16. Plaintiff is informed and believes that as a matter of official policy – rooted in an
26 entrenched posture of deliberate indifference to the constitutional rights of ordinary citizens –
27 Defendant Pleasanton has long allowed Plaintiff and others similarly situated to be abused by
28 officers of the PPD, including but not limited to those defendants named above.

*Hall v. Pleasanton, et al.*
AMENDED COMPLAINT FOR DAMAGES
AND FOR INJUNCTIVE RELIEF     - 3 -     P001A

17. Plaintiff is informed and believes that the culture of tolerance which existed and may still exist at the PPD is rooted in the deliberate indifference of high-ranking City officials, including SPILLER and DOES 1-50, inclusive, and/or other persons within the PPD's hierarchy. Plaintiff is informed and believes that as a result of the above facts, he suffered the violation of constitutional rights because of the customs, practices, policies, and patterns within the PPD, including but not limited to a deliberate indifference in hiring, training, supervision, and discipline of the PPD and the defendants named above.

18. Plaintiff is informed and believes that despite notice of repeated constitutional violations being perpetrated by employees of the PPD, Defendants Spiller, Does 1–50, and each of them failed to take appropriate action.

19. Plaintiff is informed and believes that as a direct, legal, and proximate result of the acts and omissions alleged above, Plaintiff suffered the loss of his constitutional rights and suffered grievous injuries. The losses and injuries were caused, in part, by unconstitutional yet official, *de facto* customs, policies, practices, and patterns, which were the moving force behind causing Plaintiff's injuries. These policies included but were not limited to the so-called "Code of Silence," failure to take remedial actions, tacit or express ratification (condoning) of the unlawful acts, and similar conduct by Defendants and each of them. Plaintiff is informed and believes that unlawful conduct was condoned, encouraged, approved, and/or ratified by Defendants Spiller, Reimer, Does 1-50, and each of them.

20. Plaintiff is informed and believe that as a result of the above facts, he suffered the violation of constitutional rights and was injured.

**SPECIFIC FACTS**

21. On June 9, 2013, Cody Hall was involved in a fatal motor vehicle collision.

22. Allegations against Cody were that he was speeding, texting while driving, and that his distraction was a cause of the collision. Tested shortly after the collision, Cody was found not to be intoxicated or under the influence of any medications/drugs. The June 9, 2013, accident was an unfortunate and tragic event resulting in a woman's death.

/ / /

23. On information and belief, Defendants named herein obtained a warrant under false pretenses and stormed the Hall residence of June 20, 1993, on Echo Court in Pleasanton. Plaintiffs are informed that to obtain the search warrant of Plaintiffs' home, Defendants misrepresented other motor vehicle accidents as involving Cody (when these accidents did not) and in fact used un-related information and photographs posted on social media web-sites by third parties as falsely related to Cody. Using the warrant obtained under false pretenses by Tujague, Defendants essentially forced their way into Plaintiffs' home, searched areas of the home they admitted had not connection with Cody, seized property unrelated to Cody's motor vehicle collision and the "crimes" committed June 9, 2013, and seized relatively benign but highly personal property of all plaintiffs named herein as well as Aaron Hall.

24. After searching Cody, who was home that day, and all of the areas to which Cody had access, Defendants exceeded the permissible scope of the warrant and notions of fairness and probable cause, and eventually forced open a safe in the homes garage.

    A. Defendants admitted at the time they searched the home, and thereafter, that they believed the safe was not something to which Cody had access; in fact, they admitted at the time that they knew the safe belonged to Cody's father, Aaron Hall. One or more of the PPD employees recognized that the safe was not within the area to be searched yet they all failed to intervene. In waiting for other City employees to arrive before the safe was forced open, the defendants had long finished searching the Hall Family's home.

    B. In fact, given Cody's relative age (born August 22, 1994), he was only 18-years-old at the time of the search on June 20, 2013, search; thus, these defendants knew or should have known that the safe they intended to search was not Cody's safe. This is particularly true in view of the fact that Cody was alone on June 9, 2013, when he was involved in the fatal collision mentioned above, and was not in possession of contraband that date.

25. Before they forced open the safe, Defendants allowed Cody to leave the family home, again admitting that nothing they found prior to that point linked to Cody. The PPD linked nothing in the safe to Cody; and, Defendant Reimer publicly announced that the things taken on June 20, 2013, from the Hall family home were not linked to Cody Hall. Plaintiff is

*Hall v. Pleasanton, et al.*
AMENDED COMPLAINT FOR DAMAGES
AND FOR INJUNCTIVE RELIEF     - 5 -

P001A

informed and believes that Defendant Tujague had unlawfully obtained a warrant through false pretenses, false statements, or material omissions. He knew, for example, that Cody was not under the influence at the time of the fatal collision; and, that Cody was alone at that time on June 9 2013. Yet, on about June 20, 2013, Defendants unlawfully searched the Hall family home as alleged above.

26. Among items unlawfully seized by the defendants on June 20, 2013, were video, irreplaceable family photos belonging to all the plaintiffs (Leslie, her two minor children, as well as Aaron Hall), home security systems, and related electronic items and data. Cody Hall was convicted of vehicular manslaughter in May 2014; Aaron Hall was convicted of California Penal Code section 29800(a)(1) on July 9, 2014. Despite claiming in his warrant affidavit that property seized that was not used for any criminal prosecution *would be promptly* returned, Tujague failed to return any of the subject property; Plaintiffs, through Aaron Hall, were thus forced to file multiple motions with the Alameda County Superior Court.

A. The initial motion Aaron filed was continued from September 2014 to October 31, 2014; that motion was granted but the PPD refused to return the Hall Family's property. Aaron was thus forced to file another motion, which was granted after a request for contempt as to the PPD and Defendant spiller was sought.

B After the PPD and Spiller repeatedly refused to return the Halls' property (Spiller was personally named in the request for contempt and served with the contempt papers), repeated motions and court appearances finally resulted ni the Hall Family's property being returned in late May 2015. Among the items returned were Aaron Hall's electronic equipment and photographs belonging to all Plaintiffs. Defendants knew, or should have known, that these items were not "contraband" because they admitted to searching the electronic equipment and reviewing each of the photographs during the pendency of both criminal actions. The motions for release of the property, granted over opposition from the City of Pleasanton, were required and damaged the plaintiff.

C. Plaintiff Aaron Matthew Hall is not challenging at this time the unlawful search or seizure of property (leading to his July 2014 conviction) by Defendants on June 20,

2013. Rather, Aaron Matthew Hall (Aaron) seeks redress for stigma imposed on him unlawfully and falsely by Defendants following the search and seizure, as well as seizure of non-contraband and continued retention of personal property.

27. The false things stated by Defendants and each of them about Aaron included but were not limited to the following:

    a. That Aaron was a twice convicted felon as of June 20, 2013;

    b That Aaron had been arrested for attempted murder;

    c. That Aaron was in possession of methamphetamine;

    d. That Aaron lied on his DROS application;

    e. That Aaron was a convicted felon as of June 20, 2013;

    f. That Aaron would be counting time in jail not in months but in years; and,

    g. That Aaron was guilty of insurance fraud.

28. These false comments in various combinations were made by Defendants Tujague, Reimer, and each of them from June 20, 2013, until about July or August 2014. At the time Defendants made these false comments publicly, and knowingly caused the release of the falsities to various news and internet outlets, Aaron was employed at Gallagher & Burk. As previously stated, this was a union job obtained through Local 3, and was in fact a protected property interest guaranteed by federal and state law.

29. After Defendants began to publish the false statements about Aaron, his managers at Gallagher & Burk commented that they were following the comments and criminal case against Aaron in the press; they expressed an awareness of the [false] comments being made by Defendants and republished in news and internet outlets.

30. On November 19, 2013, Aaron was terminated, without cause, from his Union job at Gallagher & Burk. He is informed and believe that because of the many false statements Defendants published about him, his employer did not trust him and thus terminated him.

31. Other employment problems followed Aaron as a direct, legal result of the many false and defamatory statements published by Defendants and republished.

32. Plaintiff has been subjected to unequal treatment in this manner.

33. Plaintiff was unlawfully subjected to defamation intended to cause, and in fact causing severe emotional distress and financial concerns.

34. Defendants failed to take minimal steps to verify the facts they published which they knew, or should have known, to be false. For example, the original felony conviction of 1994 was in fact expunged under Penal Code section 1203.4 in 2004, yet Defendants published as a fact that the 2004 event was in fact a second criminal conviction (it as an *expungement*). Defendants who seized material from Aaron's house on June 20, 2013, knew or should have known that the minor's ADD medication seized was not in fact illegal methamphetamine. So, too, Aaron had never committed, or been charged, with insurance fraud yet Defendants published such false, unsubstantiated statements as fact.

35. Defendants refused to take measures to correct their errors in this regard. They also refused to release Plaintiff's property, such as cameras and computers. Plaintiff filed a motion for release of his property in the People v. Aaron Hall matter; on October 31, 2014, that motion was granted that date and still Defendants refused to release Plaintiff's property. Plaintiff then filed on his own behalf and on behalf of his family a request for an order to show cause and/or contempt against Defendants; that matter was heard on February 13, 2015. Defendants claimed the property could not be released because the motion had been filed, and order originally granted, in the wrong case; they claimed that the motion should have been filed in the People v. Cody Hall matter. While the Superior Court eventually ordered approximately nine (9) items of non-contraband property – seized June 20, 2013 – released, some items were not catalogued or inventoried by the defendants; videos from June 20, 2013, show that Defendants took one or more cameras from Plaintiff's home but have never admitted these were seized and have not returned these to Plaintiff or his family.

36. Plaintiff suffered injuries as a result.

### FIRST CAUSE OF ACTION

### 42 USC §1983

37. Plaintiff incorporates all preceding paragraphs as though set forth fully herein.

38. Plaintiff is informed that, as to Defendants and each of them, each was acting

1 pursuant to official, de facto policies and in concert with one another when they injured Plaintiff;
2 each was acting in concert with the co-defendants, with the shared objective to injure the
3 plaintiff and others like him.  During the unlawful search and seizure of non-contradn, as well as
4 the unlawful retention for two years, Defendants aided and abetted the injury-causing acts of
5 their co-Defendants.  Defendants Tujague and Reimer, with others, stigmatized Plaintiff,
6 caused injury to his reputation from these officials' false statements, and Plaintiff also suffered
7 burden or alteration of his status or rights. Defendants caused deprivation of Plaintiff's property,
8 absconded with several items from Plaintiff's house (such as video cameras which disappeared
9 and remain unaccounted for), and termination of his protected employment.

39. Said rights are substantive guarantees under the First, Fourth, and/or Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiff prays for relief as set forth below.

### SECOND CAUSE OF ACTION

### 42 USC §1983

40. Plaintiff incorporates all preceding paragraphs as though set forth fully herein.

41. Plaintiff is informed that, as to supervisory Defendants such as Spiller and Reimer, and each of them, each created, condoned, ratified, or was otherwise responsible for the official, *de facto* policies which were the moving force in causing Plaintiff's damages and injuries.  Defendants stigmatized Plaintiff, caused injury to his reputation from these false statements, and Plaintiff also suffered burden or alteration of his status or rights.  Defendants caused deprivation of Plaintiff's property, and termination of a his protected employment. Spiller took a personal role in these events when he was served with the Court order(s) for release of the Hall property and refused to permit its release; Spiller then further resisted the lawful release of property when he was served with the request for contempt directed to him personally and continued to force Plaintiff to incur legal expenses and he caused further delay of the property release order by the Alameda County Superior Court.

42. Said rights are substantive guarantees under the First, Fourth, and/or Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiff prays for relief as follows:

**PRAYER**

    a.    Compensatory damages according to proof;

    b.    General damages according to proof;

    c.    Punitive and exemplary damages, as to the individually-named defendants, only;

    d.    For costs of suit and for reasonable attorneys' fees under, *inter alia,* 42 USC section 1988;

    e.    For pre-judgment and post-judgment interest;

    f.    For an order requiring Defendants, all persons acting on behalf of Defendants, and each of them, to do the following:

        1.    To retract the false statements specified above, and to apologize;

        2.    To stop all harassing acts aimed at Plaintiff and his family;

        3.    To retrain each of the individually-named defendants regarding the proper use of authority and the discipline process;

        4.    To terminate the individually-named defendant with a history of committing similar acts of malfeasance.

    g.    Such other and further relief as the Court deems just and proper.

Date: September 16, 2015

        *Russell A. Robinson /s/*
By:    Russell A. Robinson
Law Office of Russell A. Robinson
Counsel for Plaintiff
**AARON MATTHEW HALL**

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial, as is his right.

Date: September 16, 2015

        *Russell A. Robinson /s/*
By:    Russell A. Robinson
Law Office of Russell A. Robinson
Counsel for Plaintiff
**AARON MATTHEW HALL**

*Hall v. Pleasanton, et al.*
AMENDED COMPLAINT FOR DAMAGES
AND FOR INJUNCTIVE RELIEF    - 10 -    P001A